Thompson, J.
This was an action on the case brought by the plaintiffs against the defendant, who was captain of a ship in their employ, for breach of orders.
On the part of the defendantit was alleged, that the instructions vested some discretionary powers in him; but that, admitting he had violated his instructions, still the plaintiffs have, by their conduct, adopted his acts, and thereby waived all claim to compensation. The general principles of law, as applicable to cases of this description, are not controverted. There can be no doubt but that a captain is responsible in damages to his owners for disobedience of orders; and there can be as little doubt but that the owners may adopt such acts as would be deemed a violation of instructions, and thereby waive all claim to damages on that account. The great difficulty arises in the application of the law to the case before us. The original instructions of the plaintiffs are very particular, and seem not to give any great latitude to the exercise of discretion. They say, “It is our desire that you strictly adhere to the following instructions, which are to be considered as binding on you, and not to be deviated [*537] from.” They then proceed *to point out the yoj‘ *677 age, and the conduct to be observed by the captain. It-appears to me, clearly, that the defendant’s returning te New Orleans from the Havanna, instead of coming to New York, was a breach of orders. But the most important question appears to be, whether there has not been a waiver by the plaintiffs of their claim for damages. The circumstances relied on by the defendant, to show that his acts have been adopted by the plaintiffs, are various. Their force and importance will depend much on an accurate attention to dates. I would, in the first place, observe, that there is no pretence but that the defendant acted in good faith, and in a manner, as he supposed, best calculated to promote the interest of the plaintiffs. The great confidence which they uniformly, in all their letters, avow to repose in him, even after a breach of the orders, as appearing in the case, afford a strong presumption that the defendant, at least, if not the plaintiffs themselves, supposed he had some descretion left him as to the employment of the ship. These considerations ought to induce us to give the most favorable construction to his acts. The defendant, by letter of the 25th of November, 1799, when at sea, on the voyage from New Orleans to the Havanna, informs the plaintiffs, “ that if, on his arrival at the Havanna, he finds no advice from them, he intended to go to Campeachy, if he could get permission. If he could not, he should run down to New Orleans for a freight home.” This communication is unaccountable, if the defendant supposed no discretion left him, and that he was bound by the strict letter of his instructions. He probably placed great reliance on that part of his orders which expressed so much confidence in him, and declares that the chief dependence was placed on his exertions. It does not appear that the defendant received any advice whatever from the plaintiffs while at the Havanna, the first time. Their letter directed to him at that place, bears date the 28th day of November, 1799, the very day he arrived there, and there is no evidence that he received it before he left that place, which was on the *678 39th of the ensuing month,- on his voyage back to Hew Orleans. It does' not appear that any freight [*538] offered for the United States, or that the *Oaptain , sought for any. The plaintiffh, by letter, dated the 2d of January,-1800, acknowledge the receipt of the information from the captain that he proposed going to Campeachy, or returning to Hew Orleans, and they greatly lament such determination, on account of the high premiums of insurance on that voyage, but say nothing about his having broken his orders. Again, by letter of the 29 th of January, 1800, the plaintiffs complain much of the defendant for not writing oftoner, and advising them of his situation, so that they might keep'the ship and cargo covered by insurance. This letter, which may emphatically be styled a letter of complaint, is so far from containing any suggestion of a violation of orders, that it expressly declares, “ All the fault we find (and which is a great one) is your omission and neglect of writing us by every opportunity.” When this letter was written, the plaintiffs had full knowledge of the situation of the ship; they well knew that the defendant was pursuing a different line of conduct than the one they had marked out for him; still they found no fault with this: the only complaint was, that he did not keep them advised of his situation, so that they might secure themselves by insurance. And by the testimony of Mr. Bloodgood, it appears that, in the month of February, 1800, and after the plaintiffs knew of the defendant’s intention of going from the Hávanna to Hew Orleans a second time, Mr. Ludlow, one of the plaintiffs, declared that Captain Hacker was an honest man, and that he believed he did the best for their interest, and the only fault he found was his not writing. He made no complaint of disobedience of orders. These acts and declarations, I think, afford an irresistible conclusion, that the plaintiffs intended to adopt all the acts of the defendant of which they were apprized the beginning of February, 1800. These acts included the voyage from the Havanna to Hew Orleans. It remains to *679 be examined whether the plaintiffs have, by any subsequent conduct, adopted the acts of the defendant after that time. It appears by the defendant’s letter, dated at Hew Orleans the 23d of February, 1800, he had received the plaintiffs’ letter dated the 2d of January, 1800, wherein they gave him positive orders to come immediately home with the ship. *But by the same letter he [*539] apprizes them that he had previously purchased a cargo on their account, from which he could not retract, which made it necessary for him to proceed on the same route he went before. And by another letter of April the 19th, he apprizes them of his arrival at the Havanna a second time. After this, we find the plaintiffs insuring this ship and cargo, as their own, on the voyage from the Havanna to Hew York. On her arrival at Hew York, they took possession of her, sold the cargo, received the proceeds, and treated them in every respect as their own. This conduct it appears to me, is conclusive to show that they considered the reasons assigned by the defendant for going to the Havanna a second time, as sufficient; and that they intended to adopt his acts. In the case of Smith and others, v. Colgan and others, 2 D & E. 188, in a note, it was decided by Buller, J. that where a principal, with knowledge of all the circumstances, adopts the acts of his agent for a moment, he ought to be bound by them. So also, in the case of Cornwall v. Wilson, 1 Vez. 509, where a factor in the purchase of goods had exceeded the price limited, yet the principal received the goods, and disposed of them as his own ; and it was held that this was an adoption of the factor’s act,' notwithstanding the principal, by a letter, had expressly disavowed receiving the goods on his own account. Lord Chancellor Hardwieke declares the principal concluded by his own acts; by taking the goods to himself, and treating them as his own; and that these acts, being subsequent to the letter disaffirming the contract, explained the nature of the whole 'transaction, and the *680 intent with which he acted. [1] These. I think, are salu' tory principles, and such as the facts before us will fully warrant us in applying to the present case. I am therefore of opinion a new trial ought to be granted.
Kent, J.
There can be no doubt, I think, but that the defendant was guilty of a breach of orders, in returning back to New Orleans from the Havanna. Here the deviation from his instructions commenced, and the only question is, whether the plaintiffs have, by their acts and declarations, ratified his conduct, and precluded themselves from the present suit. The rule is, that if, with a [*540] knowledge of all its circumstances, *a principal adopts the acts of his agent, he is bound by them. 2 D. & E. by Buller, J. 1 Vez. 509. This principle was recognized by this court, in the case of Towel & Jaclcson v. Stevenson, 1 Johns Cas. 110, decided in October term, 1799. In that case, the defendant received a bill of exchange to collect for the plaintiffs, and to enable the endorser to secure himself, he surrendered it up to the endorser, without receiving the money, and consequently, made himself liable. This fact was afterwards disclosed by him' to the plaintiffs, who, without any express discharge to him, or ratification of his act, assumed the business of pressing the endorser for payment. The endorser failed, and this 'assumption of the business, after a full disclosure had been made, was held to exonerate the defendant. The defendant, in the present case, seems not to be liable to the charge of any intentional wrong. Although the great outline of the voyage was prescribed to him, he was, in every other respect, left with large discretionary powers. It is admit ted, as not liable to dispute, that an explicit approbation of the conduct of the defendant would be a waiver of any *681 remedy on the part of the plaintiffs; and are not the circumstances in this case equivalent to such approbation? When a factor is entrusted with large power, requiring the exercise of much sound judgment, and he acts with an honest, though misguided zeal, for the interest of his principal, it is just and politic to construe the acts of the principal pretty liberally in favor of an adoption of those of the agent. After the plaintiffs had full knowledge of the defendant’s second voyage to New Orleans, they insure, on their own account, the cargo and freight of such second voyage, and of the subsequent voyages back to the Havanna and to New York. They receive, sell and take to themselves the proceeds of the molasses, which were an investment by the defendant at the Havanna of what was to be traced back, as the result of part of the freight of the first voyage from New Orleans to the Havanna, and which molasses the defendant had shipped to the plaintiffs as for their account. They declare by letter to the defendant, that they have full confidence he would use his best endeavor to promote their interest, and that they find no fault with him, *except in his neglect in [*541] not writing to them, and they declared the same to other persons. These acts and declarations amount to something more than an equivocal adoption of the defendant’s acts — they are a clear and intelligible approbation. The molasses were the result of a conversion by the defendant of the freight, and yet the plaintiffs accept the molasses, as shipped on their account, and sell them as .their own. During all these acts, there is not a disavowal in any shape of the defendant’s conduct. In the case of Cornwall v. Wilson, 1 Yez. 509, the factor, in the purchase of hemp, exceeded his limited price. The principal, by word, refused the contract, as he had a right to do, but he still took the goods to himself. He acted with them as his own; sold them as his own, and not as factor for his factor. Lord Hardwicke held that notwithstanding what he said, he meant to take them as his own, and de *682 creed, accordingly, that the principal was bound by the price given. The present case is certainly as strong for the defendant, and I am of opinion that the plaintiffs have sufficiently sanctioned the defendant’s departure from his instructions, and are not entitled to recover against him on that ground. The verdict is accordingly against evi donee, and ought to be set aside, on payment of costs.
Lewis, Ch. J.
The plaintiffs, as owners, prosecute the defendant for breach, of orders, as master of their ship Young Eagle.
The defendant has committed a breach of those orders, and for this he is liable in damages, unies justified by the peculiar circumstrnces of his situation, or discharged by the subsequent conduct of the plaintiffs.
The state of the ship created no impediment. She was completely repaired at New Orleans on her first arrival there. The season of the year was a fact known to the owners at the time they gave the instructions. The want of freight and convoy cannot form a justification, as they wére not events by which the conduct of the voyage was to be influenced.
For a discharge, on the ground of the plaintiffs’ having adopted his acts, the defendant relies on certain conversations between Mr. Ludlow and Mr. Bloodgood, [*542] the letter *of the plaintiffs of the 29th of January, 1800, their procuring insurance on the unauthorized voyages, and their receiving and selling the cargo of molasses he brought from Havanna to New York. The substance of these conversations, was that Mr. Ludlow believed Mr. Hacker an honest man; that he did the best for their interest; and that the only fault he found was his not writing. When these conversations took place does not precisely appear, further, than that one was about the 6th of February, 1800, the other in the spring of that year. The letter of the 29th of January is to nearly the samé *683 effect; containing a declaration that all the fault they found was the defendants omitting to write to them.
It must be remembered that at the time of these conversations, and of Writing the letter of the 29th of January, it does not appear that the plaintiffs knew of his having actually committed a breach of orders. They only knew he contemplated it when at sea on the 25th of November,- in the event of his not meeting at Havanna with advice from them. This cannot, then be construed into an approbation of conduct, of which they probably were ignorant. But were it otherwise, the approbation relied on to excuse malconduct, where by paroi, merely, ought to be unequivocal and explicit; and a mere declaration of a belief in the honesty and integrity of the defendant, and a refusal to complain of his conduct, cannot be sufficient; Many an honest man has committed errors which have rendered him liable in damages, and many an injured one has refused to complain.
The acts of the plaintiffs remain to be considered. Their procuring insurance on the unauthorized voyages, and their receiving and selling the molasses. I can discover no prinprinciple on which either of these acts can be construed into an adoption of the conduct of the defendant. It would be a regulation ruinous to commerce, if whenever á portion of a merchant’s property is sacrificed by the unauthorized acts of the master of his ship or consignee, thát he should be obliged to jeopardize the remainder, before he shall be entitled to a recovery in damages. In the present instance, the owners’ property, in neither the vessel, her cargo, nor her earnings, *was in [*543] any wise changed by the conduct of her master. They were, therefore, perfectly correct in what they did, and their right to recovér remains unimpaired. I am of opinion the defendant také nothing by his motion.
New trial granted.

 See Delafield. v. State of Illinois, 26 Wend. 192; Lawrence v. Taylor, 5 Hill, 107 ; Moss v. Rossie Lead Mining Co., 5 Hill, 137; Caines v. Blecker, 12 J. R. 300; Vienna v. Baulay, 3 Cow. 281; Towle v. Stevenson, 1 J. C. 110 Armstrong v. Gilchrist, 2 J. C. 424.