CATHERINE COYLE, adm'x, &c. *vs.* THE CITY OF BROOKLYN.

Where, in an action to recover a balance due on a contract made between the plaintiff's intestate and the defendant, there was but one question of fact between the parties determined by the jury, viz. whether the defendant had paid the amount agreed to be paid, and the defendant's claim that it had been paid, was supported by proof tending to show that one L. who had received the money, was a partner in the contract with the plaintiff's intestate, and also by evidence that the plaintiff had in fact authorized the defendant to pay L.; and the jury, upon conflicting evidence, found for the plaintiff; *Held*, that it must be considered as finally settled that the plaintiff's intestate, alone, was the contractor, and that the plaintiff did not give the defendant any authority to pay to, or L. any authority to receive, for her, the payment for the work.

And it being conceded that L. did superintend the work, having been employed by the deceased contractor, and continuing to superintend the same under the plaintiff as administratrix of the latter; *Held* that the plaintiff, by claiming under the contract, was not in law bound to ratify, and did not thereby ratify the acts of L. and with them the unauthorized receipt of the money from the defendant, in the absence of any proof of knowledge by her of the receipt of the money by him.

*Held, also*, that the case did not come within the rule that a principal cannot be permitted to enjoy the fruits of a bargain without adopting the instrumentalities of the agent in consummating it.

That the contract having been made by the principal, performance of it entitled the plaintiff, as his personal representative, to payment, and payment not having been made, to her or her agent duly authorized, her right of action was made out. And that an unauthorized payment to L. could not be ratified by her bringing an action on the contract, as she claimed nothing by reason of such payment, but on the contrary repudiated it, entirely. GIL-BERT, J. dissented.

THIS action was brought to recover money due on a contract entered into between Patrick Coyle, deceased, and the city of Brooklyn, for the paving of Grand street with Belgian pavement. The contract bears date the 14th day of April, 1865. The work was commenced in the month of March previous, and was completed about the 16th day of September, 1865. Coyle died on the 30th day of May, 1865, and the plaintiff is his administratrix.

The gross amount of the contract was $31,777.50, and on the 28th day of June, 1865, there was paid to the plain-

tiff in this action, on account, the sum of $7070. On the 1st day of August, 1865, there was paid to William B. Lewis $9450; and on the 16th September, 1865, there was paid also to Lewis the sum of $15,257.50, being the balance due on the contract. The plaintiff admitted the payment of the $7070, but denied the other payments. The defense was substantially that Lewis, to whom the subsequent payments were made, was the authorized agent of the plaintiff; while the plaintiff, on the contrary, insisted that Lewis was only the foreman in charge of the work. The defendant also claimed, on the trial, that Lewis was a partner of Coyle, and that, as surviving partner, he was entitled to collect the moneys.

The cause was tried on the 29th day of November, 1867, before Justice LOTT and a jury, and resulted in a verdict in favor of the plaintiff for the full amount claimed— $24,707.50, with interest.

A motion was made for a new trial on the minutes, and motion denied. The defendant appealed from the order denying the motion for a new trial, and also from the judgment entered herein.

*Alexander McCue*, for the appellant. I. The verdict of the jury was clearly against the weight of evidence. The comptroller and Lewis both swear positively to the directions given by the plaintiff in the office of the comptroller to make all future payments to Lewis.

II. The comptroller and Lewis both swear positively as to the relation in which the latter stood in the contract—as a partner with Coyle. And this position is corroborated by all the facts in the case. 1. All the work done and materials furnished, were done and furnished at the expense of Mr. Lewis. This amount must have exceeded $10,000 to have entitled the contractor to have received the first payment of seventy per cent—his $7070. 2. Immediately upon the receipt of this first payment, the plaintiff placed

Coyle *v.* City of Brooklyn.

to the individual credit of Mr. Lewis the sum of $6000. 3. The plaintiff visited the work from time to time as the work progressed. Mr. Lewis swears he told her of the subsequent payments made to him by the comptroller, as they were made. The plaintiff denies this; but the fact remains undisputed that she was a business woman, accustomed, as she says, to this contract system, and she should be presumed to have notice of the fact that the contractor was entitled to payments from time to time as the work progressed. She neither advances, nor offers to advance, any money for the prosecution of the work, and although she knows that the work is done, makes no inquiry of the comptroller as to the moneys due on the contract, till after January, 1866, and this too at a time when her necessities obliged her to borrow $500 from this very comptroller, who ought to have had in his hands a large amount of her money, if she was the real principal in the contract; and to crown all, she makes and files an inventory of her husband's estate, in which she states under oath that the interest of her husband in the contract was one half, and correctly appraised at $300.

III. Whether Lewis was a partner or not, or whether express authority was or was not given to the comptroller to pay, and to Lewis to receive the moneys; the facts above alluded to, show that Mr. Lewis was her agent and attorney; in fact, her foreman, having full and unlimited control of that work, paying the laborers and purchasing all materials. The moneys which he received were applied, as Lewis swears, without contradiction, to the payment of the bills for material and labor done, furnished on this work. Beyond any doubt, the plaintiff, assuming her to be solely interested in the contract, would have been liable for work done or materials furnished on the order of Mr. Lewis. In receiving and disbursing this money, therefore, Lewis was acting strictly within the line of authority, and the defendants are entitled to protection. And whether

he was or not, all the work for which the plaintiff claims having been performed by him, the plaintiff cannot accept his acts in doing the work as having been done as her agent, and yet disaffirm his acts in drawing the money which it was necessary that he should have in order to prosecute the work. "A principal cannot accept the action of an agent so far as it is beneficial to himself and reject the residue." (*Farmers' L. and T. Co.* v. *Walworth* 1 *N. Y. Rep.* 433, 447. *See also Story on Agency,* §§ 250, 253 ; *Bell* v. *Shibley,* 33 *Barb.* 610 ; *Dexter* v. *Adams,* 1 *How. App. Cas.* 771, 793 ; *Cobb* v. *Dows,* 10 *N. Y. Rep.* 335 ; *Hearne* v. *Keene,* 5 *Bosw.* 579 ; *Ferguson* v. *Hamilton,* 35 *Barb.* 427 ; *Crans* v. *Hunter,* 28 *N. Y. Rep.* 389 ; *Elwell* v. *Chamberlin,* 31 *id.* 611.)

IV. The story of the defendant is entirely improbable in itself. The inventory sworn to by her; the surrender of the entire work to the charge and management of Lewis, in connection with other facts to which attention has been called, are utterly inconsistent with the pretense that Mr. Lewis was a mere "foreman of the job."

V. The relations of Faron and Lewis with the plaintiff were such that no reasonable person could justly impute to them, or either of them, a desire to wrong her in the matter in question. Comptroller Faron was liable to the city if he paid the moneys to Lewis without proper authority, and there is no pretense of doubt as to his responsibility. Lewis had no object in drawing these moneys unless he believed he was authorized so to do; still less would he have spent these moneys in the performance of this contract if his object had been to defraud the plaintiff; it would have been much easier, and certainly more natural, had such been his object, to have pocketed the money and abandoned the work. Besides, their relations were of such a character as to preclude the idea of a combination on the part of Faron and Lewis to injure the plaintiff. The one acted as her arbitrator in some diffi-

Coyle *v.* City of Brooklyn.

culty with her son; the other loaned her money; both were her friends.

VI. There is, therefore, no sufficient motive shown which should discredit either Faron or Lewis, while the conduct of the plaintiff, and her talk about the giving of $500 to the deputy street commissioner for a certificate on the work, all of which is flatly denied, shows that her pretentions to being a competent business woman, are tolerably well founded, while she has motive enough to be dishonest. We submit that her testimony is unworthy of credit. The jury have clearly acted under some improper view of the testimony in the case, and their verdict should be set aside.

VII. The court erred in permitting the plaintiff to contradict the witness Faron.

VIII. The exceptions to the charge of the court are well taken.

IX. The motion for a new trial should not have been denied. " A new trial should always be granted where the weight of evidence is in favor of the applicant, and it appears that justice has not been done." (*Gra. & Wat. on New Trials*, vol. 1, *p.* 368. *Sheldon* v. *Hudson River R. R.* 29 *Barb.* 226. *Conrad* v. *Williams*, 6 *Hill*, 444. *Hart* v. *Hosack*, 1 *Caines*, 25. *Jackson* v. *Sternbergh, Id.* 162. *Mumford* v. *Smith, Id.* 520. *Boyd* v. *Colt*, 20 *How. Pr.* 384. *Dolsen* v. *Arnold*, 10 *id.* 528. *Vance* v. *Phillips*, 6 *Hill*, 433. *Wright* v. *Orient Ins. Co.*, 6 *Bosw.* 269. *Robbins* v. *Hudson River R. R. Co.*, 7 *id.* 1. *Lansing* v. *Stone*, 37 *Barb.* 15.)

X. Appeals from the decisions of the judge who tried the cause at circuit, on motions for new trial made upon his minutes, have been considered, in this district, ever since the adoption of the Code. The Code provides for a speedy hearing of a motion for a new trial to be made before the judge who presided at the trial, to be made upon his minutes at the same term. (§ 264.) The same

section expressly provides for an appeal from the decision, and states that " a case or exceptions " must be had. See also the succeeding section, which also refers to both kinds of motions at circuit, (upon the minutes,) and at special term upon a case made. (§ 265.) The section of the Code relating to appeals from judgments on trials before a court, without a jury, also refers to the reviewing of a trial by jury upon the facts. (*See* § 268.)

XI. The subsequent chapters of the Code directing the manner, &c. in which appeals shall be taken, are to be considered in relation to the preceding provisions as to motions and decisions. It is, therefore, evident that sections 264, 265 and 349 are to be considered the one with reference to the other. Section 349 provides that " an appeal may, in like manner, and within the same time, be taken from an order made at a special term by a single judge of the same court or county, or by a special county judge," &c. From the preceding provisions of the Code it is evident that this sentence should be read as if punctuated with a comma after the words " special term," otherwise no effect is given to the words " by a single judge," and what is intended for an efficient provision is made mere surplusage. It is only because of the want of that comma in the printed copies of the Code that the plaintiff can contend that the provisions of the Code at sections No. 264 and 265 are of no account, and that the right of appeal from motions for new trial upon the judge's minutes is not given. The sections above cited have always been considered in this district as giving the right of appeal. (*Allgro* v. *Duncan*, 24 *How. Pr.* 210. *Morange* v. *Morris*, 20 *id.* 257. *Watson* v. *Scriven*, 7 *id.* 9. *Moore* v. *Wood*, 19 *id.* 409. *Till. & Shear. Prac. vol.* 2, *p.* 561.) The decision in the case of *Parker* v. *Jervis*, (34 *How. Pr.* 254,) is contrary to the established practice in all the districts of the state. It is opposed to all the reported cases upon the subject, and while, if followed, it would com-

pletely overthrow all established practice, precedent and authority, upon one of the most familiar subjects known to the bench and bar, it treats the matter as if the opinion given was only following the established practice.

XII. Upon both the matters of law and the questions of fact urged herein, the judgment should be reversed, and a new trial ordered.

*Crooke, Bergen & Pratt,* for the respondent. I. The only question in this case was, whether the payments made by the defendant to Wm. B. Lewis, amounting to $24,707.50, were properly made; and that question depended entirely, under the charge of the court, upon a question of fact; and that question of fact was presented and submitted by the presiding judge to the jury in three ways, and we will consider them separately. *First.* Was William B. Lewis a partner with Patrick Coyle, in his life time, in the contract? (*a.*) To constitute a partnership there must be a communion of, and participation in, *profits and loss.* This is well settled. (*Pattison* v. *Blanchard,* 1 *Seld.* 186. *Post* v. *Kimberly,* 9 *John.* 470. *Conklin* v. *Barton,* 43 *Barb.* 435. *Mumford* v. *Nicoll,* 20 *John.* 171. *Turner* v. *Bissell,* 14 *Pick.* 192, 195. *Story on Partnership,* 69. *Rice* v. *Austin,* 17 *Mass. Rep.* 197, 206. *Loomis* v. *Marshall,* 12 *Conn. Rep.* 69.) (*b.*) The evidence in this case does not establish a partnership. There is no evidence that Lewis was to participate in any loss. The evidence of Faron that Coyle told him, two or three months before his death, that Lewis was going in with him as a partner, proves nothing, because there is no evidence that that intention (if it ever existed) was ever carried out. (*c.*) Lewis does not swear that he was a partner, but according to his testimony, the arrangment between him and Coyle was as follows: "The arrangement was, that I was to furnish the money, being allowed interest for all the money I furnished on the contract, and one half of the profits." (*d.*) And his testi-

mony altogether, is entirely consistent with Mrs. Coyle's, that Lewis was a foreman on the work, and was to have a share of the profits as compensation for his services. (*e.*) Again, if he was a partner, or claimed to be, why did he apply to Mrs. Coyle for money on the 28th of June, when he swears he was to furnish all the money. Again, why did he sign the receipts on the contract as agent or attorney of Mrs. Coyle, as administratrix. If he was a partner he was entitled to receive the money from the city as surviving partner. (*f.*) If Lewis was a partner, and Faron knew it, as he swears he did, why did Faron require, and why did Lewis give receipts in the name of Mrs. Coyle, the administratrix. If that story be true, Mrs. Coyle had no right to the money, and the receipts taken from her by Faron were no protection to the city, because in that case, Faron, in paying to Mrs. Coyle, with knowledge that she was not entitled to the money, would be making a willful misapplication of the funds of the city, and such payment would be no protection to the city in an action by the surviving partner. (*g.*) The fact is evident from the testimony in this case, that this idea of a partnership was an afterthought, and it does not dovetail in with the facts of this case.

II. The question as to whether there was a partnership was a question of fact for the jury, under the evidence and instructions of the court, and we submit that it was submitted by the judge in as favorable a way for the defendant as it could have been ; and we insist that if the learned judge erred at all on that subject, it was in making a charge more favorable to the defendant than it was entitled to upon the evidence.

III. The charge of the judge as to what is necessary to constitute a partnership, is elementary law. 

IV. The jury having found the fact that there was no partnership, their finding is conclusive. (*Parker* v. *Jervis*, 34 *How. Pr.* 256.)

V. *The second question is:* Did Mrs. Coyle, the plaintiff, authorize the payment of the money or the delivery of the bonds in question to William B. Lewis? (*a.*) Upon this question the testimony of Lewis and Faron on the one side, and of the plaintiff, Catharine Coyle, on the other, is squarely in conflict. (*b.*) The testimony of Lewis and Faron is not supported by a single fact in the case, and stands alone. (*c.*) The testimony of Mrs. Coyle is corroborated by many material facts in the case, among which are the following: 1st. By the statements of Lewis and Faron that Lewis was a partner of Mr. Coyle; because, if that was true, Faron not only did not require any authority from Mrs. Coyle, but it would have been an idle ceremony for her to give it; because, upon their theory of a partnership, Lewis, as surviving partner, was the only person entitled to receive the money or bonds, and the only person who could receive and receipt for them, and, therefore, their two theories are utterly inconsistent, and makes their whole testimony unreliable. 2d. She is confirmed and strengthened by the fact that the version given by Lewis of the alleged interview between the three, when the alleged authority was given, is certainly contrary to the version given by Faron, and in direct conflict with it, one swearing positively that Mrs. Coyle was present when the receipt on the contract was signed, and the other swearing that she was not.

VI. The question as to whether the authority was given, was a pure question of fact, upon the evidence. And the testimony of the witnesses is in direct conflict; and the court will perceive that the testimony of Mrs. Coyle is supported and confirmed by many important facts in the case, while, on the other hand, that of Faron and Lewis is in conflict between themselves, and the testimony of neither one is supported by any fact in the case; and we claim that the finding of the jury upon that fact, under the

charge of the judge in this case, is conclusive. (*Heritage, adm. &c.* v. *Hall*, 33 *Barb.* 347. *Hosen* v. *Hammond*, 39 *id.* 96.)

*The third question is:* Did the plaintiff expressly prohibit the city from paying the money or bonds to Lewis? 1st. The jury have found as a fact that the defendant was expressly prohibited from paying the bonds or money to Lewis, or to any one except the plaintiff herself, and if Lewis was the general agent of the plaintiff to do this particular work, yet when the defendant was prohibited from paying over the bonds or money to any one but the plaintiff, it was a restriction on his authority of which the defendant had notice and could not violate. The finding of the jury that the defendant was prohibited, is sustained by the evidence. (*a.*) The plaintiff did not intend that Lewis should use the installments falling due on the contract to finish the work, and that is evident for the following reasons: 1st. Lewis had agreed to furnish all the money, and was to have interest on his advances. He was at work under a special contract, by the terms of which he was to have interest on the money he advanced, and one half the profits, as compensation for his services. 2d. Mrs. Coyle did not hold him out to the defendant as her agent, nor adopt his acts by bringing this suit. On the contrary, she expressly prohibited the defendant from paying to him and by bringing this action she expressly repudiates the payment to Lewis, by the defendant and the receipt of the money by him. (*a.*) It is like the case of A building a house for B, under a special contract, whereby he was to do all work and furnish all materials. A borrows money and obtains materials on credit of a person who had notice of the terms of the contract. When the house is finished, B, by entering into possession, does not make himself liable for the indebtedness of A. (*b.*) Any claim by Lewis that he was acting for Mrs. Coyle in receiving the money could not bind her, because the defendant, before making

the payment, had been expressly notified by the plaintiff not to pay to any one but herself. 3d. Even without this express prohibition she did not accredit him as her agent to receive the money, and it was in no manner contemplated by the relations between them that he should receive it. 1st. By his (Lewis) own evidence it appears that he was to furnish all the money from his own funds to finish the work. 2d. Mrs. Coyle was required by Lewis to go to the comptroller's office to get the first installment. Up to this time no one claims that he had any such authority. It was at this interview with the comptroller that she expressly prohibited him from paying to any one other than herself, and the jury have found that no authority was given by her, either at that interview or afterward, and that finding is supported by the evidence of Mrs. Coyle, and it is also supported by the contradiction between Lewis and Faron as to what did take place. 3d. The plaintiff has never received any benefit from these unauthorized payments. She only obtained what she was entitled to under the contract between Lewis and Patrick Coyle; not even that, for she advanced six thousand dollars to Lewis, which was not called for by said contract. 4th. This case is not within the principle that a principal cannot adopt part of the acts of an agent and repudiate part. The plaintiff does not adopt any of Lewis' acts in connection with receiving this money. Suppose I authorize A to purchase a horse of a man who knows exactly the extent of his agency, and he does purchase a horse, and at the same time sells my farm. Do I by taking the horse adopt his act in selling my farm to a stranger? In order to be within the principle, the act of the agent must be a part of the business about which he is employed. Collecting debts for Mrs. Coyle as administratrix was no part of the work of a foreman in charge of a gang of workmen; especially where he undertakes to collect of a party who has been notified not to pay him. 4th. The plaintiff did repudiate the acts of

Lewis in the only way possible. 1st. She did not know they were paid over until January 8, 1866, and the work was then finished. She could not tear up the work. She could only demand the bonds and bring suit. 2d. Lewis did not finish this contract; he only worked there as any other hand. The materials had been purchased by Coyle before his death and the men hired and set to work. Lewis was only to see that they kept at work and did the work properly. It was done by Mrs. Coyle, and the estate is liable. 3d. The jury found as facts : 1. That Lewis was not a partner. 2. That he was not authorized by Mrs. Coyle to receive the money from the city. 3. That she had instructed the defendant not to pay the money or bonds to any one but herself, or on her written order. And these findings of fact are supported by the evidence.

VII. The order denying motion for new trial, on the minutes of the judge, is not appealable. 1. There are but three grounds upon which a motion can be made on the minutes, viz. "Upon exceptions, or for insufficient evidence, or for excessive damages." (*Code*, § 264.) And the context of this section shows that the motion must be made at the circuit. 2. It will not be claimed that the motion in this case was made upon the grounds of "exceptions," or "for excessive damages." The only other ground, then, is "for insufficient evidence"—and that, then, was the ground of the motion in this case. 3. Now we say that there is no provision of law, giving an appeal from an order made by the judge, denying a motion for a new trial on his minutes, on this ground. 4. "Where the trial is by jury, the motion for a new trial upon the law and the fact, must be made and decided in the first instance at special term; and the Code in such case only authorizes an appeal upon the law, to be taken directly to the general term from a judgment." (*Magee* v. *Osborn*, 32 *N. Y. Rep.* 678.) 5. The provisions of the Code regulating motions for new trials, in trials by jury, will be found

contained in sections 264, 265. These sections do not authorize any appeal. 6. The provisions regulating appeals to the general term of the Supreme Court from circuit and special term, &c. are contained in chapter 4, of title 11, of the Code, and that chapter is entitled, "Appeals to the Supreme Court and the Superior Court and Court of Common Pleas of the city of New York from a single judge to the general term;" and section 348, contained in that chapter, is entitled, "Appeal from circuit and special term to same court in general term," &c, &c. That section is as follows: "In the Supreme Court, the Superior Court of the city of New York, and the Court of Common Pleas for the city and county of New York, an appeal upon the law may be taken to the general term from a judgment entered upon the report of referees, or the direction of a single judge of the same court, in all cases; and upon the fact when the trial is by the court or referees." But no appeal is given upon the fact when the trial is by jury. In the Supreme Court the appeal must be heard in the same manner as if it were an appeal from an inferior court. 7. The above are the only provisions of law regulating motions for new trials in cases tried by jury and appeals from circuit to general term. The 349th section of the Code does not apply to trials by jury at all. It is restricted to, and only applies to orders made at special term. The order appealed from in this case was made at circuit on the minutes, and not at special term, and section 349 of the Code has no application to it. We claim, then, 1st. That the order denying motion on the minutes, on the ground that the verdict is against the evidence, is a discretionary order and not appealable. (*Thurber* v. *Townsend*, 22 *N. Y. Rep.* 517.) 2d. That there is no provision of law allowing an appeal upon the facts in a case of a trial by jury. (*See Parker* v. *Jervis*, 34 *How. Pr.* 256.) 3d. That in no event can an appeal be had upon the facts, in case of trial by jury, until after a motion made at special term on

a case made, and then the appeal taken from the order of the special term, under section 340. (*Lobach* v. *Hotchkiss*, 17 *Abb.* 88. *Anderson* v. *Dickie, Id.* 84. *Rule* 33, *Supreme Court.*) 4th. That there is no appeal given from an order denying motion for a new trial on judge's minutes. 5th. The court will perceive that the appeal given by section 348, from circuit and special term to general term, upon the facts, is restricted to cases where the trial is by the court or referees. (*Parker* v. *Jervis*, 34 *How. Pr.* 256.) 6th. Section 323. Writs of error in civil actions, as they have heretofore existed, are abolished, and the only mode of reviewing a judgment or order in a civil action shall be prescribed by this title. (*Title* 11.) 7th. The order denying motion for new trial upon the minutes, was a mere formal order, entered of course without argument, and it was not suggested that it was made on any such ground, that the verdict was contrary to the evidence, and was supposed and treated as made on the questions of law raised by exceptions. 8th. It is unfair for the general term to review a jury trial on the facts when the question is for the first time started at the argument, at general term. 9th. We insist, that if the motion on the minutes is made on the ground that the verdict is "against evidence," the party making the motion should so state it at the circuit, and that unless he does, the motion will be presumed to have been made upon the exception taken, and he should not be allowed to spring the question upon us on the argument at general term. In *Morange* v. *Morris*, (20 *How. Pr.* 257,) Judge HOGEBOOM, in his opinion, (at page 263,) states the law as follows : "But where the case is sought to be reviewed both upon questions of law and questions of fact upon a settled case, containing the evidence and the exceptions, such case must be first heard at the special term, before a single judge and before judgment, because there is no provision of the Code allowing a review of the facts in the first instance by the general term." The court will

Coyle *v.* City of Brooklyn.

perceive, by an examination of the reported cases that in every instance where the question of the power of the Supreme Court to grant.new trials upon the ground that the verdict is against evidence is discussed, they are cases where the cause was tried either before the court or referees under section 348; or cases where a motion for a new trial was made upon a case made and settled at a special term and argued upon that question there, and came up on an appeal from that order under section 349; or cases where no motion for a new trial was not made at all. And we have been unable, after a careful examination, to find a single authority holding that an appeal, such as was taken in this case, brings up any thing more than the exceptions taken at the trial. In *Morrison* v. *New York and New Haven R. R. Co.*, (32 *Barb.* 568,) Judge ALLEN says: "To present a question of fact upon the evidence, or the right of the unsuccessful party to a new trial for the reason that the verdict is against evidence, or upon the ground of surprise, or newly discovered evidence, or the like, a motion must be made at special term, and from the order made upon such motion an appeal may be taken to the general term." (*Code,* § 349.)

For the reasons above given, we claim that in this case the court can only examine the questions of law presented upon this appeal.

*By the Court,* J. F. BARNARD, J. There was but one question of fact between the parties, which has been determined by the jury. It was not disputed but that the contract of the city of Brooklyn with the plaintiff's deceased husband had been executed. The defendant claimed to have paid the price of performance. This claim was supported by proof tending to show that William B. Lewis, who had received the money due upon the contract, was a partner therein with the plaintiff's intestate, and also by evidence that the plaintiff had in fact authorized the defendant to

pay Lewis. The evidence of the parties was in strict con-
tradiction upon this issue, and the jury have found for the
plaintiff. It must therefore be considered by this court
as finally settled, that Patrick Coyle alone was the con-
tractor, and that the plaintiff did not give the city any
authority to pay to, or William B. Lewis any authority to
receive for her the payment for the work: It is conceded
that Lewis did superintend the work; he was employed
by the deceased contractor and continued to superintend
the same under the plaintiff as his administratrix. The
plaintiff brings her action upon the contract thus per-
formed under the direction of Lewis. This presents the
only remaining question, whether the plaintiff, by claim-
ing under the contract, is not in law bound to ratify, and
does not thereby ratify the acts of Lewis, and with them
the unauthorized receipt of the money from the defendant.
There are two classes of cases under which a principal is
bound by the unauthorized acts of an agent; one where
the principal, after knowledge of the unauthorized act of
the agent, ratifies and consents to it, or where, after like
knowledge, the principal fails to give notice of dissent
within a reasonable time. In this case there is no proof
of knowledge by the plaintiff of the unauthorized receipt
of the money from the defendant by Lewis. The principle
established by the other class of cases is, that a principal
cannot be permitted to enjoy the fruits of a bargain with-
out adopting the instrumentalities of the agent in consum-
mating it. There is no case in which this doctrine is
maintained where the cause of action was not created by
the unauthorized act of the agent; either a chose in
action was purchased, or a claim was canceled without
authority by an agent for his principal and a new security
substituted. If a principal sue upon a security bought
without authority, or sue upon a substituted security given
for one canceled without authority, he by reason thereof
ratifies the act of the agent by which the securities were

Coyle *v.* City of Brooklyn.

obtained. In this case the contract was made by the principal; its performance entitles the plaintiff to payment. It must be paid to her or her agent duly authorized. It has not been done; her right of action is made out. An unauthorized payment to Lewis cannot be ratified by her action upon this contract; she claims nothing by reason of such payment; she repudiates it entirely.

The judgment should be affirmed, with costs.

GILBERT, J. (dissenting.) On the 14th day of April, 1865, Patrick Coyle, deceased, entered into a contract with the defendant, for the paving of Grand street with Belgian pavement, for a certain price per running foot, which was to be paid in installments, from time to time as the work progressed, not exceeding seventy per cent of the contract price for the work actually done. On the 30th of May, 1865, and before any work had been done under the contract, Mr. Coyle died. The contract was actually performed by William B. Lewis, or under his supervision and direction. On the 20th of June, 1865, sufficient work had been done by Lewis to earn an installment of $7070, and on that day the defendant made a payment to the plaintiff upon the contract, of that amount. The plaintiff deposited $6000 of this sum in the Nassau Bank to the credit of Lewis, to pay for material and labor on the work. The subsequent installments due upon the contract, amounting in the aggregate to $24,707.50, were from time to time paid by the comptroller of the city directly to Mr. Lewis, and he testified that he applied the same in the execution of the contract. The plaintiff furnished no evidence contradictory of this: on the contrary the evidence shows that the plaintiff never did an act towards performing the contract, or expended a dollar upon the work, except as aforesaid. Both Lewis and the comptroller also testify that Mrs. Coyle expressly authorized these payments to be made, and that she was informed

of the making of them immediately after they were made. The plaintiff, however, denies that she gave any such authority, or that she had such knowledge. Evidence was given tending to show that Lewis was, in point of fact, a partner with Patrick Coyle, deceased, in the contract; and evidence was given on the part of the plaintiff to disprove such partnership. The last payment, which included all that was due upon the contract, was made September 16, 1865. The plaintiff made no application for any payment until January following, and was then, as she testifies, informed for the first time of the aforesaid payments having been made to Lewis. She then repudiated the authority to receive said moneys altogether, and without offering to allow any sum which had been actually expended in executing the contract, brought this action, as administratrix of her deceased husband, Patrick Coyle, to recover the aforesaid balance of $24,707.50. The jury rendered a verdict in her favor for that amount. The defendant then moved for a new trial upon the minutes, which was denied. Judgment having been entered, the defendants appealed from that and also from the order refusing a new trial.

I shall not discuss the legal propositions contained in the judge's charge, for I am of opinion that the motion for a new trial should have been granted, because there is not any evidence to sustain the verdict. The only disputed question of fact arose upon a theory of the transaction presented by the defendant, which was utterly opposed to that of the plaintiff. I put aside, then, all evidence on the part of the defendant, and take the facts testified to by the plaintiff as undisputed. According to her testimony Lewis was her agent to perform the work required to be done, in order to entitle her to the payments under the contract. She gave Lewis no express authority or instructions. As she states the case, he had no authority, except such as the law implies from the nature of the employment, and the general course of the business committed to

him. The rule of law upon this subject is, that whatever acts are usually done by agents of that kind, are deemed to be incidents of the authority confided to them in their particular business, employment or character. In other words, the mode in which the business, in which the agent is employed, is usually done, furnishes the rule by which his authority is measured. (*Story on·Ag.* 60–106. *Jeffrey* v. *Bigelow,* 13 *Wend.* 520. *Sandford* v. *Handy,* 23 *id.* 266. *Nelson* v. *Cowing,* 6 *Hill,* 366. *Capel* v. *Thornton,* 3 *C. & P.* 352. *Edmonds* v. *Bushell,* 1 *Law Rep. Q. B.* 97.) In this case the inference is irresistible, that the plaintiff intended that Lewis should use the installments, provided by the contract, in performing the work. She provided no means herself. She did not request him to make any advances. In fact she neither said or did any thing, except to recognize him as foreman, who was to receive an indefinite share of the profits for his services. How did she expect he was to accomplish the work ? Did she suppose he would make advances, or buy materials on credit, or borrow money to pay laborers ? If he had authority to do either of these things, it was not conferred expressly upon him, but arose solely by implication from the nature of his employment, and the usual course of that kind of business. The same implication would suffice to authorize him to receive the payments which were made under the contract. I will say in this connection that the statement of Lewis, that he was to furnish one half the money and have one half the profits, does not help the plaintiff's case, for two reasons; first, because this was part of an alleged partnership agreement which the plaintiff denies and repudiates, and second, because the money to be thus furnished, was only what was necessary before a reimbursement by payments under the contract. And such an arrangement necessarily involves a right on the part of Lewis to receive such payments from the city.

Such being the nature of the agency of Lewis, whether

in fact he had authority to receive the payments or not, he did receive them, as the plaintiff testifies and as the jury have found, while assuming to act for her in a business in which she had accredited him as her agent. According to Lewis' testimony, which is not contradicted, he appropriated these payments in execution of the contract.

Upon a well established principle of law, the plaintiff is precluded from maintaining an action to recover the fruits of this assumed agency, while at the same time she repudiates the acts of the agent, whereby those fruits were secured. If Lewis was not her agent to perform the contract, then it has not been performed by her, or on her behalf. If he was her agent for that purpose, he was authorized to employ means appropriate to that end. No means could be more appropriate than the advances which by the contract it was provided the defendant should make. (*Cases supra.*) The principle stated has been applied in numerous instances, and in a great variety of ways, to prevent fraud and injustice, and is indispensable for that purpose. Holt, Ch. J. thus declares it in *Bolton* v. *Hillersden*, (1 *Ld. Ray.* 224.) If a master has never en rusted a servant to charge him by signing notes in the master's name, yet if the money, for which such note is signed, comes to the use of the master, or if, in the present case, the servant gave the note to raise money to pay the foreign bills charged to his master, which is for the benefit of his master, such note will bind the master, though he never permitted the servant to sign such notes before." The rule is thus stated by Mr. Hovenden : " Though an agent act gratuitously in exceeding his authority, subsequent approbation adopts his acts; and this approbation *will be inferred*, whenever the principal avails himself of any advantage derived from his acts, for he will not be permitted to avow his agent's negotiations as to part, and disavow as to the residue." (*Hov. on Fraud*, 144.) In *Fitzsimmons* v. *Joslyn*, (21 *Vermont Rep.* 139,) Redfield, Ch. J. lays down

the rule, that the principal must in every view be impli-
cated to the fullest extent in what his agent did within the
scope of what he *expected him to do,* or within that which
*he knew he had done,* if he still *persists in taking the benefit*
the agent's act." See also to the same effect *Story's
Agency,* § 250; *Paley on Agency, Dunlap's ed.* 172. The
decisions of our own courts from an unbroken chain of
authority to the same effect, form an early period to the
present time. A few of them are cited. (*Codwise* v. *Hacker,*
1 *Caines,* 539. *Shiras* v. *Morris,* 8 *Cowen,* 60. *Olmstead* v.
*Hotailing,* 1 *Hill,* 317. *Moss* v. *Rossie Co.,* 5 *id.* 137. *Dexter*
v. *Adams,* 2 *Denio,* 651. *Benedict* v. *Smith,* 10 *Paige,* 127.
*Farmers' L. and T. Co.* v. *Walworth,* 1 *N. Y. Rep.* 447. *Ben-
nett* v. *Judson,* 21 *id.* 238. *Elwell* v. *Chamberlin,* 31 *id.* 611.
*Bell* v. *Day,* 32 *id.* 165.) Indeed the principle is elementary
in the law of agency, and as Ch. J. Redfield observed in the
case of *Fitzsimmons* v. *Joslyn,* (*supra,*) is "almost innate in
the breasts of all men not wholly insensible to all just
moral relations." I think it governs this case.

It follows, therefore, that the plaintiff, by thus asserting
the agency of Lewis, and by seeking to avail herself of the
benefit of Lewis' acts, in performing the contract, neces-
sarily affirms his acts, in obtaining the means whereby it
was performed.

The judge at the circuit did not consider the real ques-
tion involved, and, through mistake or inadvertence, a
result has been obtained, which must shock every man's
sense of justice.

In such a case, on an appeal from an order refusing a
new trial, this court can unquestionably correct the error,
and it is its duty so to do by setting aside the verdict, and
granting a new trial, notwithstanding the point was not
raised in the court below. Such a course was taken in
*Catterall* v. *Hindle,* (2 *Law Rep. C. P.* 368,) and approved
by this court in *Bunnell* v. *Greathead,* (49 *Barb.* 106.) *See
also Code,* §§ 173, 174.) To doubt the authority of the

court to do so, is to challenge its power to administer justice. A verdict, which on undisputed facts is against law, cannot be allowed to stand. (*Rich* v. *Penfield,* 1 *Wend.* 380. *Lawrence* v. *Barker,* 5 *id.* 301. *Highland Bank* v. *Wynkoop,* *Hill & Den. Supp.* 243. *Sheldon* v. *Hudson River R. R. Co.* 14 *N. Y. Rep.* 218. *Keyes* v. *Devlin,* 3 *E. D. Smith,* 523. *Macy* v. *Wheeler,* 30 *N. Y. Rep.* 235. *Parker* v. *Jervis,* 34 *How. Pr.* 256.) This relief is also specifically provided for by the Code. Section 264 provides that the judge who tries the cause may entertain a motion, to be made on his minutes, to set aside a verdict, and grant a new trial upon exceptions, or for insufficient evidence, or for excessive damages. It also provides that when an appeal is taken from his decision, a case or exceptions must be settled. Section 349 authorizes an appeal from an order made at a special term, or by a single judge when it grants or refuses a new trial. It is not a proper construction of this section, to limit its operation to such order, when made at special term only. Every order, when made at special term, is directed by a single judge, for only one judge can sit thereat. But a single judge can make an order granting or refusing a new trial, when not sitting at special term or circuit, as in the case before us. The language of section 264 is, "the judge who tries the cause," not the court before which it is tried, may entertain the motion, and the section contains no requirement, that it shall be heard at special term. Moreover, the several subdivisions of section 349, embrace a great variety of orders, which are never made at special term, but are always made by a single judge in vacation. Section 349, therefore, was evidently intended to embrace both kinds of orders.

The general provision of section 329, authorizing this court, upon an appeal from a judgment, to review any intermediate order, also embraces the order in this case. (*Pumpelly* v. *Owego,* 13 *Abb.* 387. *Lane* v. *Bailey,* 1 *Abb. N. S.* 407.) Something was said on the argument about

a notice to the comptroller not to pay Lewis, but no such question was submitted to the jury. Indeed, it would be idle to attempt to give any such effect to the testimony of the plaintiff. Her direct evidence does not prove an intention to give any notice, or in any way to restrict Lewis' powers, but is a mere expression of her unwillingness to sell. Upon her cross-examination she omits altogether what she had before said, on the subject of the payments being made to her. And all that she said is perfectly consistent with the idea that she thought then, as she claimed upon the trial, that Lewis was her agent, with such authority as the law gives him.

The judgment and order denying a new trial should be reversed, and a new trial should be granted, costs to abide the event.

Judgment affirmed.

[KINGS GENERAL TERM, December 19, 1868. *Lott, J. F. Barnard, Gilbert* and *Tappen,* Justices.]