MARY L. STILWELL, Respondent, *v.* THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellant.

The general rule that the findings of a court or referee upon the facts are conclusive upon this court, if there is any evidence to warrant them, applies as well to actions of equity as actions at law.

An authority to make a contract for another is not sufficient to authorize its cancellation or surrender.

In an action to compel a restoration of a policy of insurance issued by defendant to plaintiff upon the life of her husband, upon the ground that defendant's agent, by persuasions, intimidation and threats, induced and coerced the husband, when his health and mind were impaired, to surrender the policy, it appeared, and the court found, that at the time of the surrender, although the health and mind of the husband was somewhat impaired, yet he was of sound and disposing mind and memory; he died about a month thereafter. The agent, called as witness on the part of plaintiff, testified in substance that learning that the insured had a malformation which seriously affected his health, he told him of it, and stated to him that by the concealment of the fact in the application he had done himself, the company and his family, a great injury; that it would constitute a defense to the policy, and the company would probably defend it, and advised him to surrender it, offering to return the premium; that he told the insured to think of it over night, and if he decided to surrender the policy, to bring it the next morning; that the insured came the next morning and brought the policy, when the agent told him that he must act on his own judgment and decide for himself, and the insured finally stated he would surrender the policy, and gave it up, receiving a check for the premium. *Held,* that the evidence was insufficient to sustain a finding of coercion by threats, etc.

Evidence as to declarations of the deceased, in reference to the conversations with the agent, was drawn out by defendant's counsel on the cross-examination of one of plaintiff's witness, for the purpose of testing the accuracy of an opinion given by the witness in respect to the condition

of the mind and body of the insured at the time of the surrender. *Held,* that the declarations were not available as evidence to prove the facts stated.

The husband applied for and received the policy for plaintiff as her agent. *Held,* that he had no power or authority to surrender or rescind it without her consent.

Plaintiff was informed of the surrender on the day it was made, and did not notify defendant of her dissent to the surrender until after the death of the insured. His health, however, continued to fail rapidly from the time of the surrender until his death, and plaintiff's attention was constantly required in taking care of him. *Held,* that the evidence justified a finding that there was no ratification of the surrender.

Plaintiff indorsed the check received for the returned premium. She testified that she wrote her name at the request of her husband, without knowing what it was, and the court so found. *Held,* that the finding was conclusive, and that the indorsement was not a ratification.

(Argued January 12, 1878; decided February 5, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, affirming a judgment in favor of plaintiff, entered upon a decision of the court at Special Term.

The nature of the action and the facts appear sufficiently in the opinion.

*Robert Sewell,* for appellant. No cause of action exists unless fraud is shown. (*Higbie* v. *Guardian Co.,* 53 N. Y., 603; *Baker* v. *Home Co.,* 64 id., 648; *Jeffries* v. *Ins. Co.,* 22 Md., 48; *Etna* v. *France,* 91 U. S., 512; *Foot* v. *Etna,* 61 N. Y., 571.) Mere weakness of intellect, if there is no fraud, is not of itself adequate ground to set aside a transaction. (*Simeon* v. *Wilson,* 3 Edw. Ch., 36; *Sprague* v. *Duel,* 11 Paige, 480.) The influence exercised over the deceased by defendant's agent was legitimate. (*Davis* v. *Calvert,* 5 G. & J., 269; *Gardner* v. *Gardner,* 34 N. Y., 155.) The deceased was the agent of plaintiff and had power to surrender the policy. (*Baker* v. *Un. Mut. Co.,* 43 N. Y., 283; *Thompson* v. *Am. Co.,* 46 id., 674.) Very slight evidence of ratification of the agency was sufficient. 1 Chitty on Con. [11th Am. ed.], 291; *Dillon* v.

*Anderson,* 43 N. Y., 231; *Warner* v. *Warren,* 40 id., 228; *Happy* v. *Mosher,* 48 id., 313; *Ferner* v. *Lewis,* 10 J. R., 38; *Riley* v. *Suydam,* 4 Barb., 222; *McCormick* v. *Barnum,* 10 Wend., 104.) There was a complete ratification of the surrender of the policy by plaintiff. (*Lawrence* v. *Dale,* 3 J. Ch., 41; *Wheaton* v. *Baker,* 14 Barb., 544; *Fisher* v. *Fadirhall,* 21 id., 81; *Minturn* v. *Main,* 3 Seld., 220; *Sar. R. R. Co.* v. *Row,* 24 Wend., 74; *Loyd* v. *Brewster,* 4 Paige, 537; *Brice* v. *Davenport,* 3 Keyes, 474; *Hunt* v. *Singer,* 1 Daly, 209; *Hazard* v. *Treadwell,* 1. St. R., 506; *Rusby* v. *Scarlet,* 5 Esp., 76; *Cannes* v. *Lord,* 12 J. R., 300; *Erick* v. *Johnson,* 6 Mass., 193; *Frothingham* v. *Haby,* 3 id., 70; 3 Kent's Com. [8th ed.], 801; *Johnson* v. *Wingate,* 29 Me., 404; *Grant* v. *Beard,* 50 N. H., 291; *Benedict* v. *Smith,* 10 Paige, 127; *Carious* v. *Bleeker,* 12 J. R., 300; *Klock* v. *Richtmyer,* 13 id., 367; *Johnson* v. *Jones,* 4 Barb., 369; *Viana* v. *Barclay,* 3 Cow., 281; *Shrias* v. *Morris,* 8 id., 60; *Towle* v. *Stevenson,* 1 J. Cas., 110; *Armstrong* v. *Gilchrist,* 2 id., 424; *Codwise* v. *Hucker,* 1 Cai., 526; *Hogan* v. *Mayor,* 5 Hill, 389; *Mumford* v. *Am. L. Co.,* 4 N. Y., 463; 1 Chitty on Con., 292; *Ely* v. *Mumford,* 47 Barb., 629; *Newbury* v. *Garland,* 31 id., 121; *Palmer* v. *Lawrence,* 3 Sandf., 174; *Nichols* v. *Nuchaetes,* 23 N. Y., 264; *Allerton* v. *Allerton,* 50 id., 670.)

*R. W. Van Pelt,* for respondent. The policy belonged to plaintiff, and her husband had no power or control over it. (3 R. S. [Bank's ed.], 161, § 89; Laws, 1862, chap. 172.) The husband's agency ceased upon the substitution of the policy into defendant's company. (*N. Y. L. Ins. and T. Co.* v. *Beebe,* 7 N. Y., 364.) The surrender was repudiated by plaintiff within a reasonable time. (2 Kent's Com. [8th ed.], 801; *Coyle* v. *City of Brooklyn,* 41 N. Y., 619.) No ratification of the surrender could be claimed. (*Gage* v. *Sherman,* 2 N. Y., 417; *Bredendecker* v. *Lowell,* 32 Barb., 9; *Clarke* v. *Meigs,* 10 Bos., 337; *Hope* v. *Lawrence,* 50 Barb., 258.) To make an unauthorized act of an agent

binding on the principal, on the ground of a subsequent ratification, such ratification must have been made with full knowledge of the facts affecting his rights. (*Seymour* v. *Wyckoff*, 10 N. Y., 213; *Nixon* v. *Palmer*, 8 id., 398; *Owing* v. *Hull*, 9 Pet., 629; *Brass* v. *Smith*, 40 Barb., 659; *Howell* v. *Christy*, 3 Lans., 238.)

. Church, Ch. J. This action is brought to procure a restoration of a policy of insurance upon the life of the plaintiff's husband, which was surrendered by him to the defendant, and the claim to recover is based upon two grounds : one, that the agent of the defendant, by means of persuasions, intimidations and threats, induced and coerced the husband, when his health and mind were impaired, to surrender the policy ; and the other that the husband surrendered it without authority. The judge before whom the case was tried found in favor of the plaintiff upon both points, and directed a judgment accordingly. The policy was issued on the 27th March, 1875, and surrendered on the twelfth of June by the husband, who died on the thirteenth or fourteenth of July the same year. It is urged on behalf of the appellant that the facts proved are not sufficient to justify the finding that the husband was coerced, by intimidations and threats, to surrender the policy. The general rule that the findings of a judge or referee upon the facts are conclusive upon this court, if there is any evidence to warrant them, applies as well to actions in equity as actions at law ; and in either class of actions, upon an appeal from affirmance of the judgment, we are only authorized to review the facts for the purpose of ascertaining whether any allowable construction of which they are capable will warrant the conclusion of facts at which the judge or referee has arrived. If they will, the judgment will not be disturbed ; but if not, the finding is without evidence or against evidence, and is a violation of law. The rule is similar to that presented on a motion for a nonsuit. If the evidence is not sufficient to sustain a verdict for the plaintiff, and if it would be set aside as

against evidence, the motion should be granted, and the question is one of law. When the policy was surrendered, on the twelfth of June, the assured was, and, it may be inferred, had been for a few days indisposed, but was not confined to his bed, and was able to be around and transact ordinary business at the bank and elsewhere. There is evidence tending to show that he was irritable and easily worried about small matters; but the judge finds that although his health and mind were somewhat impaired, yet he was of sound and disposing mind and memory, and the conversations detailed by the witnesses show that he understood the subjects about which he was conversing, and talked sensibly and rationally. The charge of coercion is based mainly upon the testimony of the agent himself, who was called by the defendant, and the substance of it is that he ascertained shortly before the twelfth of June, from a physician who had formerly attended the deceased, that the husband had a malformation of the genital organs, which affected his health seriously, and on the eleventh told him that he had been so informed, and asked why he did not disclose it in his application for insurance; that the assured admitted the malformation, and stated as a reason why he did not disclose it, that he did not think of it; that he then stated to the deceased, in substance, that by the concealment he had done himself, the company, and his family a great injury, and that it would constitute a defense to an action on the policy, and that the company would probably defend it, and advised him to surrender it, and offered to return the premium; that the deceased hesitated, and he told him to think of it over night, and if he decided to surrender it to come the next morning and bring his policy; that he came the next day and brought his policy, when another conversation took place in which the nature of the malformation was fully talked over; that he told him he must act on his own judgment and decide for himself; that the deceased finally said, "well, I believe I will surrender the policy." * * * "I do not want to leave my family a lawsuit," and that he thereupon gave up the

policy and took a check for the amount of the premium which had been paid. A witness was produced by the plaintiff who was a friend of the deceased, and who testified that after the first interview with the agent, the deceased told him that the agent had asked him to surrender the policy on the ground that he was sick when he took it, but did not state that it was on account of the alleged malformation ; that the agent told him that his wife would have a life-long litigation, and she never could recover on the policy, and it would cost her all the property he might leave, and asked the advice of the witness what he had better do ; that the witness advised him not to give it up; and he said he would not ; that he went out and returned in a short time and said, " I have given up my policy ;" I said " for what," he said "Mr. Brown told me the same thing again that he did before, and he said they would disgrace me — expose this fraud; that I committed a fraud on them and that they would charge me with it, and I would be disgraced with it, and he said my wife and children will be left in the position they will lose what they have got, and I gave it up." The evidence of this witness was drawn out on cross-examination by defendant's counsel for the purpose of testing the accuracy of an opinion which he had given in respect to the condition of the mind and body of deceased on the twelfth of June, when the surrender was made. The judge refused to find upon request that the malformation did exist, and there is no finding on the subject; nor is it material in this action whether the fact existed or not. It is very clear that the evidence offered by the plaintiff would not sustain the finding of coercion by threats, etc. As to the evidence drawn out on cross-examination from the last witness referred to, the declarations of the deceased are not evidence to prove the facts stated, and are only available to the plaintiff to prove the state of mind of the deceased, and the influences which appeared to be operating upon him. The evidence of what actually took place between the agent Brown and the deceased, leading to the surrender of the policy, rests principally upon the

testimony of Brown himself, and it is difficult to see how the facts stated by him could have improperly produced the result. The deceased knew whether he had this malformation or not, and if he had, it does not appear but that the demand of surrender may have been proper, nor but that the surrender itself was a judicious act on the part of the deceased. If the charge of the agent was false, there was no occasion for fear of litigation or anything else. When the specific ground is stated, and that is known to be false, it scarcely seems reasonable to suppose that it would operate even upon a man weakened in body and mind, to some extent by disease, to induce him to do an act injurious to himself and his family in consequence of such false charge, and especially under the circumstances detailed in this case. The deceased had time to reflect and to consult with his friends or with counsel in respect to it, and it seems he did advise with one friend at least, and then deliberately surrendered the policy. If the policy had been his own property and in his own name, as before stated, we should have some difficulty in sustaining the judgment on the ground of coercion, restraint, or duress, but it is unnecessary to determine this point definitely.

The other ground of action I regard as more formidable, viz., a want of power to make the surrender without the consent of the plaintiff. When this policy was taken by the husband, although he paid the premium from his own means, and even regarding it as a provision for the wife, it was irrevocable, so far as he was concerned. I think, however, that the true relation between the parties, in respect to procuring the policy, was that of principal and agent. The husband surrendered a policy of another company belonging to his wife, and applied for and received this policy for her, and in her name, as her agent, and when it was delivered to him it was, in legal contemplation, in her possession. As such agent he had no power to give it up, surrender it, or rescind it without her consent. An authority to make a contract for another is not sufficient to authorize its cancella-

tion or surrender, and the judge was justified in finding that the surrender was made without the knowledge or consent of the wife. The remaining question is, whether there was a ratification.

The general rule is that the principal must dissent within a reasonable time after knowledge of the act, on the part of the agent, or an assent will be presumed. (2 Kent's Com., 801; Story on Agency, § 256.)

The plaintiff was informed of the surrender on the day it was made, the twelfth of June, and did not notify the defendant until after the death of her husband, a month later. The question whether the notice was within a reasonable time depends so much upon the circumstances and inferences to be drawn from them as to make it substantially a question of fact, and it has been found in favor of the plaintiff. We think the evidence warranted the finding. The husband's health continued to fail rapidly from that time until his death, and the attention of the plaintiff was constantly required in taking care of him. It can scarcely be required that during this brief interval of anxiety she should inform herself of her rights in the matter, or take any legal steps to protect them, and no injury resulted by the delay to the defendant. Ratification is largely a question of intention either expressed or presumed, from circumstances, and we do not think that an intention to ratify can be presumed as a matter of law in this case. (2 Story's Eq. Jur., § 1097; Brass v. Worth, 40 Barb., 654.) The act of indorsing the check to repay the premium is claimed to be a ratification, but the evidence of the plaintiff is that she wrote her name on the back, at the request of her husband, without knowing what it was, and the judge gave credit to her evidence, so that in this branch of the case the finding is conclusive upon this court, and the judgment must be sustained, on the ground of a want of authority on the part of the husband to make the surrender.

I am unable to discover any principle upon which the plaintiff is required to return the premium as a condition of

relief. By availing herself of the contract obtained by the husband she does not ratify the surrender, nor the payment of the premium to the husband, which was a part of it. She repudiates both. (*Coyle* v. *City of Brooklyn*, 53 Barb., 41.) Nor did she receive the money, or knowingly aid the husband in receiving it.

We think that the plaintiff is entitled to a restoration of the policy, and in an action upon it the defendant can interpose any defense which could have been interposed in an action upon the original policy if it had not been surrendered.

The judgment must be affirmed.

All concur, except Folger, J., not sitting; Allen, J., absent.

Judgment affirmed.