THE THIRD AVENUE RAILROAD COMPANY, Appellant,
*against* JACOB EBLING *et al.*, Respondents.

(Decided March 15th, 1883.)

An application made to the president and directors of a street railway
company, by lessees of property owned by the company but not used in
its ordinary business, for a modification of the lease in respect of the
business to be carried on upon the demised premises, and for an exten-
sion of the term, was referred by the board of directors to a committee
of three, one of whom was the president, with power to take such action
as they might deem for the best interests of the company. *Held*, that the
president could not act alone in pursuance of the special authority so
conferred: and that the committee, even if all acted, were not thereby
authorized, neither had the president the power, by virtue of his office,
to accept a surrender of or to cancel the lease.

APPEAL from a judgment of the General Term of the
Marine Court of the city of New York affirming a judg-
ment of that court entered upon the verdict of a jury.

The facts are stated in the opinion.

*H. Morrison*, for appellant.

*Hall & Blandy*, for respondents.

VAN HOESEN, J.—Ebling and Kimmey were the lessees
of a store belonging to the Third Avenue Railroad Com-
pany, and on September 25th, 1879, they addressed a letter
" to the president and directors of the Third Avenue Rail-
road Company," in which they asked leave to change the
business "by opening a first-class restaurant," and also
asked that their lease might be extended for one year longer.
The letter was laid before the board of directors, who
referred the application of Ebling and Kimmey to a com-
mittee of three, consisting of Mr. Lyons, the president, Mr.
Lane and Mr. Lambe. Of that committee Mr. Lyons, the
president, is the only one who appears to have taken any
part in the transactions out of which the controversy in this

case arose.  As Mr. Lyons was only one of three to whom "power to take such action as they might deem for the best interests of the company" was confided, he could not act alone; and it cannot be said that whatever he did in reference to the application was done in pursuance of a special authority conferred by the directors.  The rule is that in a matter of mere private concern, if an authority be confided to more than one agent, it is requisite that all join in the execution of the power, and they are jointly responsible for each other (2 Kent's Comm. 633).  It is not upon the ground that Lyons was specially authorized to accept a surrender of the lease, that the judgment in this action is to be supported, for, as has been said, he had no power to act alone, and furthermore he and the other committeemen, Lane and Lambe, if they had all acted, were merely authorized to exercise their discretion respecting Ebling and Kimmey's application, which was simply for a modification and an extension, and not for a surrender and cancellation of the lease.  Arthur, the secretary, and Hart, the vice-president, who seem to have participated in the negotiation, had no special authority conferred upon them by the board of directors; nor had either of them, *virtute officii*, or, so far as the evidence discloses, by the company's sanction of their transactions in business of a similar character, any general authority to make a new lease, or accept the surrender of an old one.  If the surrender is to stand, it is solely because under the facts proved in this case the acceptance by Lyons of the surrender by Ebling and Kimmey of the old lease, and the giving of a new lease to Wimpress and McGee, are to be regarded as part of the ordinary business of the company.  Whatever the opinion may formerly have been as to the powers of the president of a company formed for business purposes, the rule that courts at the present day seem inclined to adopt is, that the president of a corporation may, without being specially authorized, do all acts of an ordinary character in the every day business of the corporation.  He is held out to the public as the executive head of the corporate body, and under his direction the usual

affairs of the corporation are constantly performed. It sometimes happens that the president is merely the presiding officer of the board of directors, and that he has no powers or duties of an executive character (7 Wend. 133), and where this is the case, those who seek to bind the corporation by his acts take upon themselves the burden of proving that they were done under special authority, or else that the company knew of and ratified similar transactions made by him on other occasions. Where an act is in the line of the ordinary business of the company the presumption is that the president has authority to do it, though that presumption may be overthrown (*Chicago, Burlington &c. R. R. Co.* v. *Coleman*, 18 Ill. 299; *Mitchell* v. *Deeds*, 49 Ill. 424; *Smith* v. *Smith*, 62 Ill. 496; *Lee* v. *Pittsburgh Coal Co.*, 56 How. Pr. 373). But there is no presumption that the president may do any act that is not strictly in the course of the ordinary business of the company. It will not be presumed that he has power to sell property that is not kept for the purpose of sale in the regular course of business (*Hoyt* v. *Thompson*, 5 N. Y. 320, 335), or that he can do any act that must be done under the corporate seal. Nor will it be presumed that he can voluntarily, and without consideration, release the claim of the corporation against one of its debtors (*Brouwer* v. *Appleby*, 1 Sandf. 158). In the case before us, the jury have found that Mr. Lyon accepted a surrender of the lease. The surrender was by operation of law; Wimpress and McGee having been, by agreement between Ebling and Lyon, substituted as lessees in place of Ebling and Kimmey.

It must be considered as settled that though an agent may make a contract, he cannot afterwards cancel it (*Wilson* v. *Lester*, 64 Barb. 431; *Stilwell* v. *Mutual Life Ins. Co.*, 72 N. Y. 385). An agent employed to rent premises and to collect rents has no power to consent to the substitution of a new tenant (see *Wilson* v. *Lester*, *supra*). If, therefore, Mr. Lyon, acting as president, had only the powers of an ordinary agent, I have no hesitation in holding that as he had no right to cancel the original lease, the defendants

remain liable for the rent. The management of real estate not used in its business seems to me not to fall within the ordinary business of the corporation. A sale, a lease, or a mortgage of its real estate, is not the regular business of a corporation, formed for the operation of a railway; and it is only the ordinary business of a company that the president is empowered to transact, without special authority. It is certain that Lyon had no special authority to accept a surrender, and there is no evidence to show that the company afterwards ratified his act. An attempt to establish a ratification was made by showing that the secretary, Mr. Arthur, sent a letter to Wimpress and McGee demanding from them the payment of rent. If the necessary effect of the letter was to recognize Wimpress and McGee as tenants of the company, an inference might fairly be drawn that the corporation, having been notified of what Mr. Lyon had done, had determined to confirm his act. But, the fact was proved by the defendants themselves that Wimpress and McGee had an assignment of the lease, so that the rent was properly demanded from them as assignees; and even if they had been mere under-tenants, as the lease contained a re-entry clause, they could have paid the rent, to protect their possession. The demand for the rent by the company did not, under the evidence in this case, warrant the conclusion that the letter of the secretary was sent because Ebling and Kimmey were, to the knowledge of the company, discharged from the lease. There was no evidence to warrant the judgment, for the whole case turned upon the question of the power of the president to release the defendants from the lease, and no evidence was adduced to prove that such a power had been given either specially, or by the general course of business of the corporation.

I have looked carefully into the evidence, and if this court had the power to do so, I should favor the setting aside of the verdict as against the weight of evidence. On the next trial it is to be hoped that no such testimony as that of the defendant Ebling, at folio 41, will be received. He says, " It was perfectly and plainly understood that I

was entirely discharged from all responsibility by Arthur and Lyon." Who understood that he was discharged, or from what that understanding was derived, the evidence does not disclose, and yet upon such testimony as that the verdict depends.

VAN BRUNT and J. F. DALY, JJ., concurred.

Judgment reversed and new trial ordered, with costs to abide the event.*

---

* The judgment entered upon this decision was reversed by the Court of Appeals, October 6th, 1885, upon the ground that no exception was taken by plaintiff at the trial, sufficient to raise, in the appellate court, the objection upon which the judgment of the Marine Court was reversed; a point which was not urged on the appeal to the Court of Common Pleas.