SADIE RUCKENSTEIN, Plaintiff, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Defendant.

Supreme Court, New York County, June 28, 1932.

*J. Emanuel Ankus,* for the plaintiff.

*Tanner, Sillcocks & Friend* [*Dean Potter* of counsel], for the defendant.

SHIENTAG, J. This is an action by the irrevocable beneficiary to recover the value of a $20,000 life insurance policy following the death of the insured.

On February 14, 1929, the defendant issued to Max Ruckenstein a $20,000 policy on his life payable to his wife, the present plaintiff. The insured paid two annual premiums which carried the insurance to February 14, 1931. At the end of the second policy year, February 14, 1931, the policy would have had a cash value of $520. But in September, 1930, Mr. Ruckenstein and his wife, the beneficiary, applied for a $520 loan. The company advanced the amount, less interest, and this loan was outstanding at the end of the second policy year. The existence of this loan consumed the full value of the policy, and left nothing as a cash surrender value or with which to purchase extended term or endowment insurance. On January 14, 1931, the usual premium due notice was mailed to Mr. Ruckenstein as required by section 92 of the Insurance Law. He had thirty-one days' grace after February 14, 1931, in which to make payment, and the grace period expired March 17, 1931. This third annual premium was never paid. Mr. Ruckenstein died on April 10, 1931.

On the facts stated, had there been nothing more, the policy clearly would have lapsed on March 17, 1931, before Mr. Ruckenstein's death, and there would have been nothing payable to his widow, the plaintiff.

But a transaction did take place during the grace period, which plaintiff claims kept the full policy alive, though the premium thereon was never paid.

On March 6, 1931, Mr. Ruckenstein called at defendant's inquiry office, and asked for figures on a change of his policy reducing the amount to $10,000 or $5 000. On March thirteenth the company wrote to him quoting figures on both of these propositions. On March fourteenth defendant's agent called to see him, and

Mr. Ruckenstein then signed and delivered to the agent an application to change the policy from $20,000 to $5,000 and at the same time delivered to the agent the $20,000 policy and a check for $44.65, being the amount of the quarterly premium on the policy for $5,000. The application provided that the company shall assume no liability thereunder " until it has been received, approved, and the rewritten policy issued and delivered during the life-time of the applicant."

Nothing else was done within the grace period. Thereafter the application took its regular course. No medical examination of the insured was requested or had by the company in connection with the application for the change. The papers were sent to the home office, received there shortly after March twentieth, and there was stamped on the $20,000 policy, " Policy changed. Change Div. March 25, 1931." On or about March 26, 1931, the policy division wrote a policy in the sum of $5,000 on the life of Mr. Ruckenstein bearing the same number and date as the $20,000 policy. The defendant neither asked for nor received the consent of the irrevocable beneficiary to the change; it never notified the beneficiary of any such contemplated change and it does not appear that the beneficiary had any knowledge thereof. On or about March 30, 1931, the $5,000 policy was sent from the home office to one of the district offices of the company, with instructions to deliver the policy to the insured and to have the form requesting the change signed by the insured and the beneficiary. On April 12, 1931, the agent called at the home of the insured with the policy and form, and on being told of the insured's death two days before, took the policy back to his office. Thereafter the beneficiary refused to receive the changed policy, and declined to accept the company's check for $4,993.63, the amount computed to be due on that policy.

So far as the entries on the books and records of the company are concerned, it does not appear that the $20,000 policy was ever entered on those records as lapsed.

On these facts the plaintiff sues for the original amount of the policy, less the earned premium and loan outstanding, and contends: (1) That being an irrevocable beneficiary, the defendant could not divest or change her interest in the contract of insurance without notice or without obtaining her consent; (2) that the act of the defendant in changing the contract of insurance from one of $20,000 to one of $5,000 was void and not binding on her; and (3) that by making such change without her knowledge or consent, defendant is estopped from setting up the failure to pay the premium of February 14, 1931.

A beneficiary unconditionally designated in a policy of life insurance has a present or vested right to receive, whenever the policy matures, whatever sum may become payable thereon in accordance with its terms.

If, therefore, while a policy is in force, the insured, insurer or both, without the consent or authorization of the beneficiary, take any action with respect to the policy that would defeat, impair or materially change the rights of the beneficiary thereunder, such action, so far as the beneficiary is concerned, has no force and effect and is void.

Thus, in the cases cited by the plaintiff, it was held that when the surrender or alteration of the policy resulted in unjust enrichment of the insured or of a new beneficiary, that action was not binding upon and could be repudiated by the original irrevocable beneficiary. (*Stilwell* v. *Mutual Life Ins. Co.*, 72 N. Y. 385; *Garner* v. *Germania Life Ins. Co.*, 110 id. 266; *Whitehead* v. *N. Y. Life Ins. Co.*, 102 id. 143.)

In those cases it was held that not only were the surrenders and changes void as against the irrevocable beneficiaries not consenting thereto, but that in actions which the latter brought upon the original policies, the companies would be precluded from setting up defaults in the payment of premiums occurring after the wrongful or unauthorized acts.

"The company cannot depend upon a default to which its own wrongful act contributed, and but for which a lapse might not have occurred. * * * The company kept the secret on its part, and now cannot set up as a defense the nonpayment of premiums which it did not intend or expect to receive, and which it may justly be said to have occasioned by its own unauthorized act." (*Whitehead* v. *N. Y. Life Ins. Co.*, *supra*, p. 156.) The court very properly held that recovery should not be limited to the surrender value.

"That would add the sanction of the court to the unauthorized surrender, and make it valid, leaving only an action for the surrender value. More than that was the interest of the assured, and greater than that their loss by the unauthorized act. They can only obtain full redress by a recovery of the amount insured, less the unpaid premiums and interest." (*Whitehead* v. *N. Y. Life Ins. Co.*, *supra*, at pp. 156, 157.)

In the three cases cited, the waiver, estoppel or disability of the company, however it may be termed, to take advantage of subsequent default in payment of premiums, was based upon the proposition that it was the wrongful or unauthorized act of the company, whether done in good faith or not, which occasioned or contributed to the occurrence of the default.

" No one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong." (*Imperator Realty Co.* v. *Tull*, 228 N. Y. 447, 457.)

In the instant case, however, no unauthorized or wrongful act of the insurance company contributed to the occurrence of the default. The insurance company was not bound to notify the beneficiary when the premium became due. (*Rowe* v. *Brooklyn Life Ins. Co.*, 11 App. Div. 532; affd., 162 N. Y. 604.) When the insurance company, three days before the expiration of the grace period, received the old policy, accompanied by an application for its modification, which was, by its terms, ineffective until the application had been approved by the insurer and a new policy had been delivered to the insured, that company did not prejudice the rights of the insured or the beneficiary under the original policy. Had either insured or beneficiary offered to pay the premium due under the original policy three days after that application, the insurance company could not have refused to continue the original policy in force. No such offer was made. The original policy lapsed before the new policy was finally agreed upon. Whether that lapse was entered upon the books of the insurer is not material.

Although the new policy was not delivered to the insured during his lifetime, the insurer is deemed to have waived its right to repudiate both the old and the new policy. This waiver the law creates, not on the theory that in negotiating for a modification of the old policy the insurer committed a wrongful or unauthorized act, but simply because it would be inequitable to permit the insurer to take advantage of an omission induced by its own conduct. (*Insurance Co.* v. *Eggleston*, 96 U. S. 572.) But the insurer, in waiving its right to claim an absolute forfeiture, has not waived its right to insist upon the reduction in the amount of the policy, which it offered as an alternative to forfeiture. Where both parties have acted within their rights, the doctrine of waiver works both ways. If the insurer is precluded from a repudiation of all liability after negotiating for a reduction in the amount of the insurance, no less is the insured or his beneficiary precluded by such negotiation from a repudiation of the reduction. In the absence of fraud, collusion or bad faith, and there is no suggestion of any such in this case, an equitable instrument should not be utilized as the basis of a technical claim. The plaintiff cannot use the waiver to the extent that it helps her and then ignore it to the extent that it hurts her.

In the very case cited by plaintiff (*Whitehead* v. *New York Life Ins. Co.*, *supra*) three policies of life insurance were involved. The court allowed recovery on two policies which were in force

when the wrongful surrender took place, notwithstanding default in payment of premiums thereafter, but held that no action would lie as to the third policy which had lapsed before the surrender.

" It is obvious * * * that if in any sense, the insurer can be said to have recognized the policy as a valid subsisting obligation, it was a conditional and not an absolute recognition. It was conditioned upon the surrender, and made solely for that purpose. * * * and the plaintiffs cannot. avail themselves of the waiver which their agent secured, and repudiate the terms and. conditions upon which alone he secured it " (p. 155). The surrender of the lapsed policy was not a wrongful or unauthorized act.

So here, there being no fraud or collusion and no wrongful or unauthorized act which changed the rights of the beneficiary while the original policy was in force, the plaintiff cannot avail herself of the waiver arising from continued negotiations and repudiate the terms and conditions of such negotiations. The defendant in its answer sets up its offer to pay to the plaintiff, who refused to accept the same, the balance computed to be due on the $5,000 policy, the sum of $4,993.63. Judgment is accordingly directed in favor of the plaintiff for $4,993.63, with interest. Settle order on one day's notice.