LILLIAN MILLER, as Administratrix, etc., of MILTON MILLER, Deceased, Plaintiff, *v.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY OF BOSTON, MASSACHUSETTS, Defendant.

City Court of New York, Bronx County, January 17, 1935.

*Hyman J. Goldberg*, for the plaintiff.

*Oeland S. Kuhn* [*George W. Riley* of counsel], for the defendant.

ADLERMAN, J. Motion, under rule 109 of the Rules of Civil Practice, to strike out the third separate and distinct defense. The action is brought by an administratrix to recover upon an insurance policy issued by the defendant on November 20, 1928, in the sum of $2,000 upon the life of Milton Miller, deceased. The insured paid the premium on the said policy for a period of three and one-half years and defaulted in the payment of the quarter-annual premium. It is alleged in the complaint that within ninety days from the due date of the premium in default, the insured filed a written request with the defendant that the policy be continued as extended term insurance. The policy provides that after two full annual premiums shall have been paid and if the payment of any subsequent premium or installments shall be in default for more than thirty-one days, then, upon written request of the holder, filed at the home office of the company within ninety days from the due date of the premium in default, the policy shall be continued at its face amount, with certain limitations for its value in extended term insurance. It is further alleged that the table of extended insurance contained in the policy provided that when premiums had been paid for three years, the policy upon default in the payment of a premium, would be continued as extended insurance for a period of thirteen years and one hundred and ninety-two days. It is also alleged that the insured borrowed certain sums of money on the policy while it was in force. The plaintiff claims that, upon filing a written request, the defendant became obligated to continue the policy as extended insurance for a period of thirteen years and one hundred and ninety-two days in the amount of $1,764.92, which is equivalent to the face amount of the policy, less the indebtedness. The third separate and distinct defense set up by the defendant, which the plaintiff seeks to strike out as insufficient in law, alleges that if the court should find that the insured duly elected to receive extended term insurance under the non-forfeiture pro-

vision of the policy, nevertheless the death of the insured occurred after the expiration of the period of extended term insurance to which the insured would have become entitled; that the values listed in the table of non-forfeiture and loan values are to be decreased by the amount of the indebtedness against the policy, and consequently by deducting the outstanding indebtedness of $235.08 from the cash surrender value of $236, there results a residue of ninety-two cents, which sum would have purchased, on May 20, 1932, the date of default, extended term insurance in the defendant company of $2,000 for a period up to and including June 12, 1932, twenty-two days in all; that since the insured died on June 29, 1933, which date was subsequent to the extended term period, the plaintiff is not entitled to any benefits thereunder.

The question before the court is, what is the interpretation to be given to option C of the non-forfeiture provision of the policy. The portion of the clause in question applicable to this case reads as follows:

" Option C. Upon written request by the holder filed at the Home Office of the Company within ninety days from the due date of the premium in default, the policy will be continued at its face amount including any outstanding additions and less any indebtedness to the Company hereon or secured hereby, for its value in participating extended term insurance (without loan privilege or disability or double indemnity benefits) dating from said due date, and having a final value if so stated in the table payable in cash at the end of the extension term if the Insured be then living."

The plaintiff construes this clause to mean that where an insured elects to exercise option C of the non-forfeiture provision, then any indebtedness to the company secured by the policy is deducted from the face amount of the policy, and the policy is continued with the resulting balance as its new face amount for that period specified in the non-forfeiture table.

Plaintiff contends that in computing extended insurance, it is of no consequence that the reserve has been depleted by loan, so that it has dwindled to the trifling sum of ninety-two cents. Such a startling result, viz., that ninety-two cents can purchase term insurance of $2,000 for over thirteen years, seems to suggest a faulty analysis.

In *Ruckenstein* v. *Metropolitan Life Ins. Co.* (144 Misc. 154; affd., 263 N. Y. 204) it was said by Mr. Justice SHEINTAG: " The existence of this loan consumed the full value of the policy, and left nothing as a cash surrender value or with which to purchase extended term or endowment insurance."

In *Wagner* v. *Thieriot* (203 App. Div. 757, 762; affd., 236 N. Y. 588) it is said: " His [*i. e.*, the policyholder's] act in electing to receive an advancement [*i. e.*, a loan] lessens the value of his insurance contract and the cash surrender value thereof."

It is to be noted, among other things, that the " table of loan values " in the case at bar states at the head of it that the values therein given will be reduced if there is any indebtedness against the policy or secured by an assignment thereof to the company.

In *Taylor* v. *New York Life Ins. Co.* (197 N. Y. 324) the court said, referring to the table of values in the policy: " The table could not prescribe the amount of continued or paid-up insurance in case of indebtedness of any kind because the extent of the continued or paid-up insurance would be dependent upon the amount of the indebtedness to be first deducted before the continued or paid-up insurance was computed."

The logic of the situation is that a man who has paid in $236 and has drawn out $235.08 has, in effect, only made an investment of ninety-two cents. It is indeed a startling proposition if a man can, for ninety-two cents premium, obtain $2,000 insurance for thirteen and one-half years on his life. The statutes of our State abhor any discrimination between individuals in the matter of charging them for insurance premiums. (Insurance Law, § 89.)

If two men could pay the same premium for three and one-half years and one of them should leave his entire fund intact and become entitled to thirteen and one-half years' extended insurance, while the other should draw out all of his fund except ninety-two cents and claim to be entitled to thirteen and one-half years' extended insurance protection, an easy way would be pointed out for discrimination to become effective. It is contrary to common sense and fair business dealing to argue that after depleting the reserve down to ninety-two cents, the policyholder still retains the identical right to extended insurance he would have had if there had been an undiminished reserve of $236.

The question presented is, whether the language used in the option is fairly susceptible of two conflicting interpretations, both of which are reasonable. Or is it rather a situation where only one of them is fair and reasonable, while the other is so forced and unnatural that in its practical results it would bring us to an absurd and unjust conclusion? As stated by CRANE, J., in *Aldrich* v. *New York Life Ins. Co.* (235 N. Y. 214, 224): "A construction which makes the contract fair and reasonable will be preferred to one which leads to harsh and unreasonable results."

The construction which plaintiff contends for would give her a tremendous advantage over other policyholders. Nobody has paid

for this advantage she would receive, and the burden of insuring this man for thirteen and one-half years at $2,000 for only ninety-two cents premium would have to be borne by other policyholders in this mutual company. If this held true for the plaintiff, no other member of the group could be denied the same privilege. The result would be unworkable and unjust and so unscientific as to seriously jeopardize the payment of all of defendant's policy claims. Motion denied. Submit order.